**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8         IN THE UNITED STATES DISTRICT COURT
9        FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11 THEME PROMOTIONS, INC,        No   C 97-4617  VRW
   a California Corporation, d/b/a
12 THEME CO-OP PROMOTIONS,        ORDER
13         Plaintiff and
        Counterdefendant,
14
        v
15
16 NEWS AMERICA MARKETING FSI, INC,
   a Delaware Corporation,
17
        Defendant and
18         Counterclaimant.
   _____/
19
20
21      Plaintiff Theme Promotions, Inc ("Theme") seeks attorney
22 fees, costs and interest following entry of judgment entered on
23 June 1, 2006. Doc #506. The Ninth Circuit affirmed the judgment
24 of the court and transferred Theme's fee application on appeal to
25 the undersigned for resolution. The parties have submitted
26 supplemental briefing on Theme's fee motion. Doc ##558, 574. For
27 the reasons set forth below, the court GRANTS Theme's motion and
28 awards attorney fees, court costs and postjudgment interest in the

amount of $3,080,840.48 plus daily interest of $386.12 from and including June 14, 2010 to the date of payment.

The factual background and procedural history of this litigation is summarized in the October 10, 2008 amended opinion of the Ninth Circuit Court of Appeals. *Theme Promotions Inc v News America Marketing FSI*, 546 F3d 991 (9th Cir 2008). Of primary relevance to the pending attorney fees motion, Theme filed suit alleging antitrust and other violations against News America Marketing FSI, Inc ("News America") on December 18, 1997. Following remand from the Ninth Circuit on Theme's appeal from the court's dismissal of Theme's antitrust claims and award of summary judgment against Theme, the court commenced a jury trial on August 8, 2005 resulting in a verdict for Theme on its claims for restraint of trade in violation of the Cartwright Act, unfair competition, and negligent and intentional interference with prospective economic relations. Declaration of Theodore Herhold in Support of Pl's Mot for Atty Fees (doc #505) Ex 9 (Jury Verdict Form dated August 30, 2005). After ruling on post-trial motions and setting aside the jury verdict on the intentional interference claims and one count of negligent interference, the court entered judgment on June 1, 2006 for Theme and against News America for damages in the amount of $3,496,024. Doc #502.

Following entry of judgment, Theme filed its original motion for attorney fees and bill of costs on June 22, 2006. Doc ##506, 510. On August 15, 2006 the court granted News America's motion to defer Theme's fee motion until completion of the parties' appeals. Doc #541. The Court of Appeals affirmed the judgment by \\

**2**

**United States District Court**
For the Northern District of California

opinion dated August 20, 2008, as amended October 10, 2008.  Doc ##551, 553.  By order dated November 14, 2008 the Court of Appeals granted Theme's motion to transfer to this court Theme's application for attorney fees on appeal.  Doc #554.

I

As the prevailing party on its claim under the Cartwright Act, Bus & Prof Code § 16720 et seq, Theme may recover its reasonable attorney fees and costs of suit.  *Carver v Chevron USA, Inc*, 97 Cal App 4th 132, 144 (2002) (citing Bus & Prof Code § 16750).  News America does not dispute that the Cartwright Act provides for fee-shifting to a prevailing plaintiff, but contends that the statute must be applied strictly to limit fee recovery to claims under the Cartwright Act.  News America argues that because Theme prevailed on only one of its twelve original claims against News America, Theme should recover only one-twelfth of its requested fees.  Doc #564 at 11.

California law governs the method of calculating the fees.  *Mangold v Cal Pub Util Com'n*, 67 F3d 1470, 1478 (9th Cir 1995).  California courts apply the lodestar method for calculating reasonable attorney fees, which is based on the reasonableness of the time spent and reasonableness of the hourly rate.  See *Graham v DaimlerChrysler Corp*, 34 Cal 4th 553, 579 (2004).  The court may adjust the lodestar for factors such as the novelty and difficulty of the questions involved; the skill displayed in presenting them; the extent to which the nature of the litigation precluded other employment by the attorneys; and the contingent nature of the fee award.  Id (citations omitted).  Theme has decided to forego any

**United States District Court**

For the Northern District of California

request for an upward multiplier on its motion for fees.  Renfrew Decl (Doc #508) ¶8.

The relevant statute provides "Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter * * * shall be awarded a reasonable attorneys' fee together with the costs of the suit." Cal Bus & Prof Code § 16750(a).  News America contends that Theme's fee recovery should be limited to work related only to the Cartwright Act.  California courts have not addressed the specific question whether a plaintiff who was successful under the Cartwright Act may recover fees associated with other claims that were based on the same set of facts or course of conduct. California courts do, however, recognize federal court decisions interpreting the Sherman Antitrust Act or the Clayton Act as persuasive authority as to the meaning of the Cartwright Act to the extent the Cartwright Act incorporates the substance of those federal statutes.  *Classen v Weller*, 145 Cal App 3d 27, 36 n5 (1983).  See *Theme Promotions*, 546 F3d at 1001 n3 ("Because California's Cartwright Act is patterned after federal antitrust acts like the Sherman Antitrust Act, California courts often cite federal antitrust cases when interpreting the Cartwright Act.").

On awarding fees in federal antitrust actions, the Ninth Circuit has held that "a prevailing antitrust plaintiff is entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery of anti-trust

\\

4

damages." *Twin City Sportservice, Inc v Charles O Finley & Co, Inc*, 676 F2d 1291, 1313 (9th Cir 1982).

Applying California law to a fee award in a non-antitrust action, the Ninth Circuit has recognized that under California law,

> "It is only when a plaintiff has achieved limited success or has failed with respect to distinct and unrelated claims, that a reduction from the lodestar is appropriate." *Hogar v Community Dev Com of Escondido*, 157 Cal App 4th 1358, 1369 (2007) (citation omitted). "However, where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his [or her] attorney's fee reduced simply because the [trial] court did not adopt each contention raised." Id (citations omitted). The party seeking fees is not required to show the reasonableness of every failed claim.

*Winterrowd v American General Annuity Ins Co*, 556 F3d 815, 827-28 (9th Cir 2009). Applying the principles expressed by state courts and by the Ninth Circuit, the court rejects News America's contention that Theme be awarded one twelfth of its requested fees. See *McCown v City of Fontana*, 565 F3d 1097, 1104-05 (9th Cir 2009) (disallowing strictly proportional reduction of fees for civil rights plaintiff who had limited success).

A

Proceeding with the lodestar calculation, the court first determines the number of hours reasonably expended on the litigation. Theme has summarized its fee request by dividing its fees into four time periods of the litigation as follows: (a) September 12, 1997 through April 10, 2002, the period identified as "Phase I" covering commencement of the action through the first appeal; (b) May 7, 2002 through April 30, 2006, the period identified as "Phase II" following remand through post-trial

5

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

proceedings; (c) May 3, 2006 through October 20, 2008, herein referred to as "Phase III" covering the appeal from judgment; and (d) October 21, 2008 to March 3, 2010, herein referred to as "Phase IV" covering the fee determination.

As a prevailing antitrust plaintiff, Theme is entitled to an award of fees for services that "would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery of anti-trust damages." *Twin City,* 676 F2d at 1313. Although Theme did not prevail on all of its claims, Theme has demonstrated that the underlying conduct that formed the basis of its successful claims was News America's unlawful enforcement of its exclusive dealing, or "right of first refusal" contracts, with the purpose and effect of restraining trade in the free standing insert market. By prevailing on its Cartwright Act claim for unreasonable restraint of trade, Theme established that News America had engaged in some "independently wrongful act," a necessary element of Theme's claims for intentional or negligent interference with prospective economic relations. Herhold Decl Ex 15 (Aug 29, 2005 Jury Instructions) at 33. Similarly, a finding that News America violated the Cartwright Act satisfied the unlawful business act or practice element of Theme's unfair competition claim. Id at 28.

The Ninth Circuit recognized that the issues and evidence related to the unlawful restraint of trade claim overlapped with the unfair competition and tortious interference claims. Herhold Decl Ex 4 (*Theme Promotions v News America*, No 01-16329, slip op (9th Cir May 3, 2002)) at 8, 10. In the order remanding the action to permit discovery to proceed on the remaining claims, the Ninth

**United States District Court**

For the Northern District of California

Circuit held that "because Theme's claim of unlawfulness of News's actions is tied to Theme's antitrust claims, we reverse so that the district court can resolve all of the claims at once." Id at 10. Theme may recover, therefore, fees for time spent on pursuing its successful antitrust claim and the related unfair competition and tortious interference claims, even though Theme prevailed on the unfair competition claim and only two of its negligent interference claims and did not prevail on any of its intentional interference claims. *Twin City*, 676 F2d at 1313 (although time devoted exclusively to unsuccessful claims is not compensable, antitrust plaintiff may recover fees for work related to the pursuit of both successful and unsuccessful claims).

Theme has deducted time associated with strictly non-antitrust matters; miscellaneous and unclear time entries; and time spent by attorneys and legal assistants who made insubstantial contributions to the case.  Herhold Decl ¶ 27.  Theme has further discounted its requested fees by deducting twenty percent of the adjusted hours for each attorney during Phases I and II (September 1997 - April 2006) to account for uncertainties over the potential for work pertaining only to the non-antitrust claims or News America's counterclaims.  Herhold Decl ¶¶ 73-74.  These deductions make suitable adjustment for these factors and are reasonable; the court is therefore satisfied that Theme adequately has deducted time billed by its attorneys that was devoted exclusively to prosecuting unsuccessful claims.

Theme seeks attorney fees for hours spent by fifteen different attorneys for the September 1997 to April 2006 time \\

7

United States District Court

For the Northern District of California

period.[1]  Third Suppl Herhold Decl (Doc #576) Exs A, B.  Given the
length of the litigation, it is reasonable to expect that some
level of duplication was necessary to litigate and try this case,
through no fault of the attorneys.  The court determines that
Theme's attorneys performed at all times as effective advocates and
displayed a high degree of professionalism.  No reduction of hours
for inefficient or duplicative work is necessary.

The court notes that Theme originally stated that the
number of attorney and paralegal hours for Phases I and II totaled
9,865.22 hours, but that does not seem to account for the
additional 20% reduction that Theme applied to its own fee request.
Compare Herhold Decl ¶31 and Renfrew Decl ¶12 (claiming 9,865.22
total hours) with Herhold Decl ¶74 ("I further reduced the fees by
20% to account for any potential remaining uncertainties as to
whether the work performed pertained exclusively to Theme's non-
antitrust claims.")  The most recent billing summary submitted by
Theme more accurately reflects its adjusted total request of
7892.18 hours, comprising 5204 attorney hours and 2688.18 legal
assistant hours.  Third Suppl Herhold Decl (Doc #576) Exs A and B.
The court determines that Theme's adjusted number of attorney hours

---

[1]      Theme was represented at trial principally by five attorneys
from the Townsend firm: partners Eugene Crew, Theodore Herhold and
Leigh Kirmsee, and associates Holly Gaudreau and Raffi Zerounian.
Herhold Decl ¶34.  Other Townsend attorneys also represented Theme
during the litigation, including partners Daniel Furniss and Paul
Kirsch, and associates Rebecca Perez-Platt, Bryon Cooper and Angus
MacDonald.  Id ¶¶41-47.  Attorney David Bunim of the Haas & Najarian
firm also represented Theme.  Id ¶49.  The Townsend legal assistants
who assisted counsel included Rhondda Ashby, Rhett Thomas and Louis
Ferrari, Jr.  Id ¶50.  Theme additionally seeks reimbursement for work
performed by attorneys C Leffler, J Talbot, M Smith, and T Ahearn.
Third Suppl Herhold Decl Exs A, B.

**United States District Court**
For the Northern District of California

through April 30, 2006, as detailed in Table A of the appendix to this order, is reasonable.

Theme further seeks reimbursement for 539.22 hours in Phase I and 2,148.96 hours in Phase II spent by the legal assistants and staff to assist the attorneys. Theme adjusted these hours downward to exclude time spent exclusively on non-antitrust matters. Third Herhold Decl Exs A, B. The court determines that the requested 2688.18 hours for the September 1997 to April 2006 period is reasonable and that no reduction is warranted for inefficient or duplicative work by the legal assistants.

The court thus determines that the total number of attorney and legal assistant hours to be used to calculate the lodestar for the September 1997 to April 2006 period is 7892.18 hours.

For Phase III (May 3, 2006 to October 20, 2008) Theme seeks fees for work spent on the appeal and its request for attorney fees before the Ninth Circuit. Theme deducts thirty percent of its adjusted hours to account for work pertaining to Theme's unsuccessful cross-appeal. Suppl Herhold Decl ¶ 10. On Theme's bill of costs on appeal for $1035.40, however, the Ninth Circuit taxed only $495. Doc #566 at 7 n 12. In awarding costs, the court of appeals held, "Plaintiff is only eligible for costs as to the portion of the appeal where the plaintiff prevailed," suggesting a determination that Theme prevailed only forty-eight percent or about half on appeal. See Malone Decl Ex W (May 6, 2009 slip op). With this limited guidance from the Ninth Circuit, the court adjusts Theme's hours to deduct half, rather than thirty percent, of the hours spent during Phase III to calculate the

United States District Court
For the Northern District of California

lodestar.  Because the court finds it reasonable that five attorneys, with the assistance of two legal assistants, would work on the appeal after judgment, the court determines that no further deduction for inefficient or duplicative work is necessary.  The reasonable number of hours spent by attorneys on the second appeal is 415.8.  See Appendix Table B.

Theme seeks reimbursement for time spent by legal assistants to assist counsel during the second appeal, deducted by thirty percent.  Following the Ninth Circuit's decision to deduct half of the costs on appeal, the court reduces by half the number of hours billed by Theme's legal assistants, resulting in 114.85 compensable paralegal hours for the May 2006 to October 20, 2008 period.  See Appendix Table B.

For Phase IV (April 16, 2009 to March 3, 2010) Theme seeks reimbursement for 117.40 hours spent by three attorneys and 59.80 paralegal hours for work directly associated with Theme's supplemental briefing on its attorney fees motion and efforts to collect on the judgment.  Doc #576 ¶6 and Ex D.  News America contends that Theme is not entitled to fees for work performed on its unsuccessful argument that the lien for judgment entered in the District of Connecticut was invalid, and that the fees claimed for the period following the second appeal should be substantially reduced.  Doc #577 at 3-4.  News America further contends that Theme has failed to submit sufficient documentation to support the claimed hours of work as required under federal law.  Id at 3.  As the Ninth Circuit has noted, however, "[i]n California, an attorney need not submit contemporaneous time records in order to recover attorney fees."  *Winterrowd*, 556 F3d at 827 (citing *Martino v*

*Denevi*, 182 Cal App 3d 553, 559 (1986)).  Applying California law for the showing required on Theme's fee motion, Mr Herhold's declaration as to the number of hours worked on the case is "sufficient evidence to support an award of attorney fees, even in the absence of detailed time records."  Id.  The court determines that 117.40 attorney hours and 59.80 paralegal hours spent on the present motion for fees and costs is reasonable and that no deduction is warranted.  See Appendix Table C.

B

The court must determine a reasonable rate to calculate the lodestar.  As the Ninth Circuit has recognized, the California Supreme Court has repeatedly confirmed the discretion of the trial court in determining appropriate fee awards:

> **"The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong' ── meaning that it abused its discretion."**

*Winterrowd*, 556 F3d at 826 (quoting *PLCM Grp v Drexler*, 22 Cal 4th 1084, 1095 (2000)).

Theme requests that its fees be calculated at the billing rates of each individual attorney and paralegal for whom Theme seeks reimbursement.  News America contends that Theme's attorney time should be compensated at a blended hourly rate based on rates charged in the local legal community as a whole, using the method employed in *Albion Pacific Property Resources, LLC v Seligman*, 329 F Supp 2d 1163, 1176-78 (ND Cal 2004) (citing *Allen v BART*, 2003 WL 23333580 (ND Cal, June 31, 2003)).  As the court has noted in other

11

**United States District Court**
For the Northern District of California

cases, "such blended rates typically depend on the overall billing mix including substantial time expended in discovery by junior attorneys with relatively low billings rates." *Young v Polo Retail, LLC*, 2007 WL 951821 at *7 (ND Cal, March 28, 2007).

In the present case, Theme was represented through post-trial motions by at least fifteen different attorneys. Three partners and two associates of the Townsend firm served as primary trial counsel, but Theme requests fees for ten other attorneys who represented Theme during the litigation. The Townsend partners charged rates during the litigation ranging from $230 to $650 per hour. Herhold Decl ¶¶ 35-37, 41-42. The hourly rates for their associates ranged from $150 to $335. Id ¶¶ 38-39, 44-47. For Townsend legal assistants, the hourly rates ranged from $50 to $210. Id ¶¶ 51-54. Of the Haas & Najarian firm, attorney David Bunim charged an hourly rate from $225 to $350 between 1997 and 2006, id ¶ 49; paralegal "PW" charged a rate of $60 per hour. Doc #576-1 at 3.

To determine a reasonable hourly rate, the court disfavors reliance on claimed billing rates. *See Yahoo! Inc v Net Games, Inc*, 329 F Supp 2d 1179, 1192 (ND Cal 2004). Where appropriate, the court calculates an average market rate in the local legal community as a whole using public data from the United States Census Bureau and Bureau of Labor Statistics ("BLS"). Id at 1189-90 citing *Gilliam v Sonoma City*, 2003 WL 23341211 (ND Cal Dec 22, 2003). See also *Albion Pacific Property Resources*, 329 F Supp 2d at 1176-78; *Allen v BART*, 2003 WL 23333580 (ND Cal July 31, 2003). News America cited these and other decisions of the court applying this method of calculating the prevailing market rate, but

United States District Court

For the Northern District of California

1  Theme did not discuss the method employed in these decisions or

2  propose an alternative method for determining a reasonable hourly

3  rate, other than its actual billing rates.  See Doc #566 at 11.

4        Having considered the method of fee calculation adopted

5  in *Yahoo! Inc* and the other cases cited by News America in support

6  of its contention that the court should calculate Theme's attorney

7  fee at a blended, average hourly rate, the court determines that

8  the better approach to fee calculation here would be to apply

9  individual hourly rates to each attorney's time, based on his or

10  her level of experience.  The court reaches this conclusion because

11  this litigation spanned twelve years and involved the work of

12  attorneys with various levels of experience, including highly

13  specialized knowledge and competence.  Attorneys with such

14  capabilities are required to litigate an antitrust action of this

15  nature and most certainly is this so when such an action is taken

16  to trial.  The court concludes that the method employed in *In re*

17  *HPL Technologies, Inc Securities Litigation*, 366 F Supp 2d 912 (ND

18  Cal 2005) of applying a variety of rates to account for various

19  levels of experience to calculate the lodestar amount would produce

20  a more reasonable fee award.  Nonetheless, in order to compare the

21  results obtained under both the blended hourly rate approach and

22  the individual hourly rate approach, the court works through both

23  scenarios.

24

25                                  1

26        When employing the blended hourly rate method proposed by

27  News America and noted in *Yahoo! Inc*, supra, the court first

28  determines the ratio of net receipts to gross receipts from Census

13

**United States District Court**

For the Northern District of California

Bureau data to approximate overhead costs that would be incorporated in the hourly rates billed to clients.  The BLS data on hourly wages earned by attorneys and legal assistants (*w*) will then be divided by this ratio of net receipts (*nr*) to gross receipts (*gr*) to determine an estimated average market rate *(r)*, as formulated in the following equation:  $r \quad = \quad w \div (nr/gr)$.

Since as early as 2001, the US Census Bureau has published the net income and gross business receipts for legal services businesses, reporting data collected and published by the Internal Revenue Service.  See United States Census Bureau, *Statistical Abstract of the United States: 2001*, Appx III at 914-15, available at www.census.gov/compendia/statab.  The most current census data on gross and net receipts by law partnerships is published in the 2010 Statistical Abstract, which contains data for the year 2006.  See United States Census Bureau, *Statistical Abstract of the United States: 2010*, tbl 730.  The 2001 to 2010 editions of the *Statistical Abstract* report business receipts and net income for law partnerships from 1998 to 2006 are shown in Table D of the Appendix.

The most current occupational employment statistics published by the BLS estimates as of May 2008 that lawyers in the San Francisco area earned a median hourly wage of $69.34 and mean hourly wage of $72.47; for legal assistants, the median wage is $28.07 and the mean wage is $29.13.  See United States Dept of Labor, Bureau of Labor Statistics, *May 2008 Metropolitan and Nonmetropolitan Area Occupational Employment and Wage Estimates for San Francisco-Oakland-Fremont, CA, Legal Occupations*, available at www.bls.gov/oes.  Adopting the method employed in *Yahoo! Inc* and

14

*Albion*, the court selects the higher mean hourly wage which is more favorable to Theme.[2]   329 F Supp 2d at 1177.   The estimated hourly mean wages for the years 1997-2008 are set forth in the table below.

To determine the estimated average market hourly rate (*r*) for attorneys and legal assistants, the hourly mean wage (*w*) is divided by the ratio of net to gross receipts (*nr/gr*) for each year, as shown in Table 4.   For the year 1997, for which the US Census Bureau did not publish relevant data for law partnerships, the court applies the net to gross receipt ratio for the year 1998. For the years 2007 and 2008, the court applies the net to gross receipt ratio determined for the year 2006, 0.363, noting that the ratio of net to gross receipts for law partnerships varied within a very narrow range of 0.003 between 2004 and 2006.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

---

[2]   In the years 2002 to 2008, the estimated mean wage was higher than the median wage for both lawyers and legal assistants. In 1997 to 2001 the median wage was higher than the mean wage for lawyers, though not for legal assistants; to maintain consistency, the court applies the mean wage for each year.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

**Table 1:  Estimated Mean Hourly Wages
and Adjusted Market Wages**

| | | Attorneys | | Legal Assistants | |
|---|---|---|---|---|---|
| BLS Data Year | Ratio (nr/gr) | Mean hourly wage (w) | Market hourly rate (r) | Mean hourly wage (w) | Market hourly rate (r) |
| 1997 | 0.394 | $36.27 | $92.06 | $20.41 | $51.80 |
| 1998 | 0.394 | $41.93 | $106.42 | $20.77 | $52.72 |
| 1999 | 0.375 | $58.55 | $156.13 | $19.45 | $51.87 |
| 2000 | 0.367 | $50.30 | $137.06 | $24.16 | $65.83 |
| 2001 | 0.352 | $54.01 | $153.44 | $25.42 | $72.22 |
| 2002 | 0.351 | $70.23 | $200.09 | $25.64 | $73.05 |
| 2003 | 0.356 | $70.45 | $197.89 | $26.74 | $75.11 |
| 2004 | 0.362 | $65.91 | $182.07 | $25.59 | $70.69 |
| 2005 | 0.365 | $62.78 | $172.00 | $26.76 | $73.32 |
| 2006 | 0.363 | $65.61 | $180.74 | $27.73 | $76.39 |
| 2007 | 0.363 | $68.73 | $189.34 | $28.72 | $79.12 |
| 2008 | 0.363 | $72.47 | $199.64 | $29.13 | $80.25 |

For Phases I and II the court applies the average hourly rate of each period to calculate the lodestar under the blended rate method.  News America suggests that the court apply the hourly rate from one single year, 2001, because "that year falls about half-way between the start-date of 1997 and the end date of 2006." Doc #564 at 18 n10.  The court declines to use the hourly wage of a single year, noting that the hourly wage for attorneys in the median years of the 1997 to 2006 period increased from $153.44 in 2001 to $200.09 in 2002.  To mitigate the fluctuations in wages from year to year over a nine-year period, and to be able to compare this hourly blended rate against the blended rate implied

16

by Theme's requested fee award for each period, the court averages the blended hourly rates for the years in each period. Using the BLS data, the average hourly market rate for attorneys in the San Francisco metropolitan area from 1997 to 2002 is $140.87; the average rate for attorneys from 2002 to 2006 is $186.56. For legal assistants, the average market rate for the 1997 to 2002 period is $61.25; for the 2002 to 2006 period the average rate for legal assistants is $73.71.

To test the reasonableness of applying an average blended hourly rate based on BLS data, the court considers the blended rate for each time period implied from the billing records submitted by Theme. By dividing the total requested fee amount by the number of hours stated in Theme's revised billing summaries for each time period, the blended hourly rates based on Theme's request are calculated as follows: for attorneys, the blended rates for Phase I is $268.21, and $406.02 for Phase II. See Third Herhold Decl Exs A (seeking $350,071.60 for 1305.2 attorney hours in Phase I), B (seeking $1,582,976.72 for 3898.80 attorney hours in Phase II). For legal assistants, the blended rates based on Theme's request for Phase I is $100.24, and $167.73 for Phase II. Id Exs A (seeking $54,052 for 539.22 legal assistant hours in Phase I), B (seeking $360,445.60 for 2,148.96 legal assistant hours in Phase II).

The blended rates based on Theme's request for Phase II are more than twice the blended rates determined with the BLS data: Theme's requested attorney rate is 2.18 times the BLS blended attorney rate ($406.02/$186.56), and the requested rate for legal assistants is 2.28 higher than the BLS blended rate

United States District Court

For the Northern District of California

($167.73/$73.71).   The difference between Theme's requested fees compared to the BLS data for Phase I is not as high, but is also significant:   Theme's requested hourly rate for attorneys is 1.9 times higher than the BLS blended rate ($268.21/140.87), and the requested rate for legal assistants is 1.64 higher than the BLS blended rate ($100.24/$61.25).

The blended rate approach is a suitable approach to determining reasonable hourly rates in many cases and the court has employed the approach in such cases.   This, however, is not a case in which that approach is appropriate.   As noted, this case necessitated inputs from attorneys and paralegals having a wide range of experience levels and professional attainments.   Indeed, litigation of this kind is far from the rather more routine, relatively low value litigation in which the blended rate approach has been found useful.   By contrast, this litigation simply could not have been concluded successfully by lawyers lacking the highest calibre of skills, diligence and capabilities.   Lawyers engaged in such litigation are entitled to reasonable compensation commensurate with services of that calibre and the blended rate approach does not provide that level of compensation.

2

The court determines that the method of determining fees used in *In re HPL Technologies* is better suited for complex antitrust litigation such as this.   In this litigation, senior Townsend attorneys worked on matters such as taking and defending most of the depositions, arguing before this court and the court of appeals, making efforts at settlement and preparing for trial.

United States District Court

For the Northern District of California

Several associates as well had substantial roles in the litigation such as discovery, legal research, drafting of briefs and trial preparation.  Herhold Decl ¶¶35-47.  In order to reflect the wide range of hourly rates for attorneys who worked on the case, and the range of responsibilities for discovery, trial and appeal among the attorneys over the course of twelve years, the court turns to the *Laffey* matrix, a widely recognized compilation of attorney and paralegal rates based on various levels of experience.  See *Laffey v Northwest Airlines, Inc*, 572 F Supp 354 (DDC 1983), aff'd in part, rev'd in part on other grounds, 746 F2d 4 (DC Cir 1984).

As in the case of using census data in the blended hourly approach to determine reasonable hourly rates in routine, non-complex litigation, using *Laffey* data in a complex case affords the advantage of measurements that have been consistently tabulated over a long period of time.  The *Laffey* matrix has been regularly prepared and updated by the Civil Division of the United States Attorney's Office for the District of Columbia and used in fee shifting cases, among others.  See http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html, visited June 2, 2010.  The *Laffey* matrix is especially useful when the work to be evaluated was performed by a mix of senior, junior and mid-level attorneys, as well as legal assistants, as is typically the case in antitrust and other complex litigation.

The rates posted in the *Laffey* matrix are tailored for the District of Columbia, which has a different cost of living index from the San Francisco, California Bay area, where Theme's attorneys work and where the suit was litigated.  To adjust the rates for the relevant legal market, the court will use the federal

19

United States District Court
For the Northern District of California

locality pay differentials based on federally compiled cost of living data.  See *In re HPL*, 366 F Supp 2d at 921 (adjusting locality pay differentials based on the geographical region in which lead counsel's firm operated).

To compensate plaintiffs' attorneys for the delay in payment of the attorney fees, district courts have the discretion to either apply the attorneys' current rates to all hours billed during the course of the litigation or use the attorneys' historical rates to which is added a prime rate enhancement.  *Welch v Metropolitan Life Ins Co*, 480 F3d 942, 947 (9th Cir 2007) (citing *In re Wash Pub Power Supply Sys Sec Litig*, 19 F3d 1291, 1305 (9th Cir 1994)).  Theme's attorneys seek payment for work performed up to twelve years ago.  Having compared current billing rates to historical billing rates for each year of this litigation enhanced by the prime rate applicable at the end of each one-year period, the court determines that the current billing rate approach undercompensates for the time value of money where, as here, the delay in payment spanned a significant number of years.  See Appendix Table E (estimation of historical *Laffey* rates each year from 1997 with prime rate enhancement up to 2010).  For example, the 1997-98 *Laffey* rate for the most senior lawyer with simple interest calculated at the prime rate of 8.5% for 12 years is about $687 as opposed to the current *Laffey* rate of about $507.

Because Theme provided billing summaries aggregating the hours billed by each attorney in groups of years or phases of the litigation, the court is unable to make adjustments for interest annually.  Had Theme furnished that information, it is possible the fee award here would be larger, perhaps significantly so.  The

court, however, proceeds with the fee calculation using historical rates for the year ending Phases I and II then applies a prime rate enhancement to compensate for the delay in payment of Phase I fees up to the date of entry of judgment, June 1, 2006.  From that date the court applies postjudgment interest pursuant to 28 USC § 1961(a).

1

For fees earned during Phase I (September 1997 to April 2002) the court turns to the *Laffey* matrix rates effective April 2002 and adjusts for the Bay area market based on the locality-based pay schedule for 2002.  In 2002, the Washington-Baltimore area had a +11.48 percent locality pay differential; the San Francisco area ("SF") had a +19.04 percent locality pay differential.  5 USCA § 5332 Schedule 9 (West 2000 & Supp I 2001).  A comparison of the pay differentials for the Washington and San Francisco localities yields a 7 percent upward adjustment to the 2001-02 *Laffey* matrix rates for the San Francisco Bay area market: (1.1904-1.1148)/1.1148 = 0.06781, rounded up to 7 percent.

Applying these adjustments to the *Laffey* matrix the court obtains the rates shown in Table 2 below for the relevant community:

\\

\\

\\

\\

\\

\\

Table 2:   2002 *Laffey* Matrix Hourly Rates, Adjusted for Locality

| Experience | *Laffey* matrix rate for 2001-02 | 2001-02 *Laffey* rates adjusted +7% for San Francisco area |
|---|---|---|
| 20+ years | $360.00 | $385.20 |
| 11-19 years | $315.00 | $337.05 |
| 8-10 years | $260.00 | $278.20 |
| 4-7 years | $210.00 | $224.70 |
| 1-3 years | $170.00 | $181.90 |
| Paralegals & Law Clerks | $95.00 | $101.65 |

2

        For fees earned during Phase II (May 2002 to April 2006),
the court applies the *Laffey* matrix rates for April 2006, adjusted
for locality based on the +17.50 percent adjustment in 2006 for the
Washington-Baltimore locality pay area and the +28.68 percent
adjustment for the San Francisco area:  (1.2868-1.1750)/1.1750 =
0.09515, rounded up to 10 percent.  5 USCA § 5332 Schedule 9 (West
2000 & Supp V 2005).  See Table 3 below.

Table 3:   2006 *Laffey* Matrix Hourly Rates, Adjusted for Locality

| Experience | *Laffey* matrix rate for 2005-06 | 2005-06 *Laffey* rates adjusted +10% for San Francisco area |
|---|---|---|
| 20+ years | $405.00 | $445.50 |
| 11-19 years | $360.00 | $396.00 |
| 8-10 years | $290.00 | $319.00 |
| 4-7 years | $235.00 | $258.50 |
| 1-3 years | $195.00 | $214.50 |
| Paralegals & Law Clerks | $115.00 | $126.50 |

**United States District Court**
For the Northern District of California

3

For fees earned during Phase III (May 2006 to October 2008) the *Laffey* matrix rates in effect for October 2008 are adjusted upward by 10 percent for the 2008 locality pay differential between Washington (+20.89%) and San Francisco (+32.53%):  (1.3253-1.2089)/1.2089 = 0.09629.  5 USCA § 5332 Schedule 9 (West 2006 & Supp I 2007).  See Table 4 below.

Table 4:  2008 *Laffey* Matrix Hourly Rates, Adjusted for Locality

| Experience | *Laffey* matrix rate for 2008-09 | 2008-09 *Laffey* rates adjusted +10% for San Francisco area |
|---|---|---|
| 20+ years | $465.00 | $511.50 |
| 11-19 years | $410.00 | $451.00 |
| 8-10 years | $330.00 | $363.00 |
| 4-7 years | $270.00 | $297.00 |
| 1-3 years | $225.00 | $247.50 |
| Paralegals & Law Clerks | $130.00 | $143.00 |

4

For fees earned during Phase IV (October 2008 to March 2010) the current *Laffey* matrix rates are adjusted upward by 9 percent based on the comparison of current locality-based pay differentials between the Washington-Baltimore area (+24.22%) and the San Francisco area (+35.15%):  (1.3515-1.2422)/1.2422 = 0.08798, rounded up to 9%.  5 USCA § 5332 Schedule 9 (West 2007 & Supp 2010).  See Table 5 below.

\\

\\

\\

Table 5:   2010 *Laffey* Matrix Hourly Rates, Adjusted for Locality

| Experience | *Laffey* matrix rate for 2009-10 | 2009-10 rates adjusted +9% for San Francisco area |
|---|---|---|
| 20+ years | $465.00 | $506.85 |
| 11-19 years | $410.00 | $446.90 |
| 8-10 years | $330.00 | $359.70 |
| 4-7 years | $270.00 | $294.30 |
| 1-3 years | $225.00 | $245.25 |
| Paralegals & Law Clerks | $130.00 | $141.70 |

C

Applying these locality-adjusted *Laffey* matrix rates to the number of hours reasonably spent by each of the fifteen attorneys who represented Theme throughout this litigation, the court computes the lodestar amount for each time period.  For Phase I the level of experience of each attorney is determined by that individual's number of years of practice as of 2002 as stated in Mr Herhold's June 22, 2006 declaration (Doc #505) and the billing summaries filed in support of Theme's motion for attorney fees (Doc #504).  For Phase II the experience level is determined as of 2006. For the attorneys whose experience level was not identified in the supporting documents, the court based the attorney's level of experience on the year that the individual was admitted to the California bar according to state bar records.

\\

\\

\\

United States District Court

For the Northern District of California

1

Having determined the reasonable number of hours and the reasonable hourly rates for each attorney based on years of experience and their legal assistants, the base fee award for Phases I and II covering the September 1997 to April 2006 period is calculated as $2,090,855.64, subject to interest.  See Appendix Table F.  The lodestar amount is $444,610.57 for Phase I and $1,646,245.07 for Phase II.

Table G of the Appendix provides a side by side comparison of the fees for Phases I and II requested by Theme against the lodestar amount by individual attorney and by legal assistants in aggregate using the *Laffey* matrix as the guide to reasonable hourly rates.  Doc ##576-1 and 576-2.  Compared to the fee amount that Theme requests for Phases I and II, $2,347,545.92, the lodestar calculated by the court is $256,690.28 or 11% less than Theme's original requested fee for Phases I and II.  Doc #558 at 19.

The difference of about 11% between the lodestar amount and the slightly higher amount billed by Theme's attorneys is significant but not large.  Note that forty percent of the difference is attributable to the difference between the hourly rate for one Theme lawyer, Eugene Crew, and the *Laffey* rate for an attorney of twenty years experience or more.  The difference for other Theme attorneys is of a lesser magnitude and in a few instances, the *Laffey* rates are higher than posted hourly rates for Theme attorneys.  This is not surprising.  Eugene Crew is a preeminent antitrust litigator, a lawyer truly at the top of the professional ladder.  He can command an hourly rate well in excess

United States District Court

For the Northern District of California

of *Laffey* rates.  Using *Laffey* rates does, to some extent, create a
disincentive for a lawyer of Mr Crew's eminence to undertake fee-
shifting work of the kind involved in this litigation.  The court
recognizes this and, in no sense, devalues Mr Crew's contribution
to the ultimate success of this litigation.  But another factor is
at work here.

The purpose of the fee shifting provisions of the
Cartwright Act, like all fee shifting provisions, is to enlist
private attorneys in law enforcement.  Law enforcement comes with a
risk both of under-enforcement and over-enforcement.  It is
important, therefore, for courts awarding fees pursuant to fee
shifting statutes to use lodestar hourly rates that are adequate
but that also scale the incentives for private enforcement to the
public purposes of such enforcement.  Use of *Laffey* rates, in the
court's view, strikes that appropriate balance.

2

To compensate Theme's attorneys for the delay in
receiving its fees, the court enhances the fees calculated at
historical rates by a prime rate interest factor.  *Welch*, 480 F3d
at 947.  As stated previously, this method of addressing delay in
payment in this case is preferable to the alternative approach of
applying current billing rates to all hours billed during the
course of litigation because a prime rate enhancement more
accurately accounts for the time value of money over a long period
of delay.

To compensate Theme for the time value of money lost
between 2002 and 2006 by the delay in payment for fees incurred

during Phase I, the court applies a prime rate enhancement for that period. As of April 10, 2002, Theme incurred reasonable attorney fees totaling $444,610.57. See Appendix Table F. Applying the US prime rate of 4.75% in effect on April 10, 2002 as published by the Wall Street Journal, compounded annually through June 1, 2006, the fee award for Phase I is adjusted upward to $527,418.43 to account for the lost time value of money. See Appendix Table H.

The court further awards postjudgment interest on fees accruing from June 1, 2006 which is the date of the judgment that secured Theme's entitlement to fees as the prevailing party. See *Friend v Kolodzieczak*, 72 F3d 1386, 1391-92 (9th Cir 1995). The court awards postjudgment interest accruing as of June 1, 2006 on the adjusted fee for Phase I, $527,418.43, and the fee for Phase II, $1,646,245.07, totaling $2,173,663.50.

The rate of postjudgment interest is governed by federal law and is calculated at a rate equal to the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of the judgment. 28 USC § 1961(a). See *AT & T v United Computer,* 98 F3d at 1209. Based on the one-year constant maturity rate for the week ending May 26, 2006 published by the Board of Governors at www.federalreserve.gov, the postjudgment interest rate is 4.99%. Applying that interest rate compounded annually from the date of judgment, June 1, 2006, to the $2,173,663.50 in fees incurred during Phases I and II, the court awards Theme fees for Phases I and II with postjudgment interest in the amount of $2,645,789.11 as of June 14, 2010. See Appendix Table I. As of June 1, 2010 the daily interest on the fees incurred through the date of judgment is $361.07.

**United States District Court**
For the Northern District of California

3

For Phase III covering the May 2006 to October 20, 2008 period Theme requests attorney fees in the amount of $310,782.85. Doc #576-5 at 4.  By multiplying the number of hours that each attorney reasonably spent by the current hourly billing rate for each attorney's level of experience, based on the 2008 *Laffey* matrix rate as adjusted for locality, the court awards fees for Phase III in the amount of $192,231.07.  See Appendix Table J.

4

For Phase IV covering the period from October 21, 2008 to March 3, 2010, Theme requests fees on fees in the amount of $88,371.00 for the work performed by attorneys and a legal assistant.  Doc #576-4 at 2.  By applying the 2010 adjusted *Laffey* matrix hourly rates the court calculates the lodestar amount for this period as $64,577.05.  See Appendix Table K.

5

Having calculated a reasonable fee for each time period for which Theme seeks compensation, the court GRANTS Theme's motion for attorney fees and postjudgment interest on fees in the amount of $2,902,597.23.

II

Theme has billed costs in this court in the amount of $184,970.77.  Doc #510.  The following expenses may be taxed as costs pursuant to 28 USC section 1920:

(1)  Fees of the clerk and marshal;

(2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)   Fees and disbursements for printing and witnesses;

(4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)   Docket fees under section 1923;

(6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828.

The following costs billed by Theme in the amount of $136,776.37 are allowable under Section 1920 and Civil Local Rule 54-2:

| | |
|---|---:|
| Filing fees | $150.00 |
| Court reporter fees: | |
| Deposition transcripts | $65,804.28 |
| Hearing transcripts | $12,291.07 |
| Witness fees | $155.00 |
| Reproduction and exemplification: | |
| Discovery production | $23,895.80 |
| Reproduce trial exhibits | $27,705.42 |
| Demonstratives for jury | $646.76 |
| Prepare deposition videos for trial | $433.50 |
| Equipment rental fees | $5,472.74 |
| Docket fee on trial | $47.50 |
| Costs on appeal (7/3/2001 filing fee and transcript) | $174.30 |
| **TOTAL TAXABLE COSTS** | **$136,776.37** |

United States District Court
For the Northern District of California

Theme also billed costs in the amount of $48,194.40 for retaining a trial consultant for electronic presentation of trial exhibits; these costs include consulting fees and travel expenses. Under Civil Local Rule 54-2(d)(5), the costs of preparing charts, diagrams, videotapes and other visual aids to be used as exhibits if such exhibits are reasonably necessary to assist the jury in understanding the issues at trial.  The expense of hiring an outside trial consultant for electronic presentation of trial exhibits was not reasonably necessary to assist the jury in the trial of this case, particularly in light of the significant expense that was incurred to reproduce paper copies of trial exhibits and prepare enlarged, mounted jury demonstratives. Therefore the court will not tax Theme's costs for retaining a trial consultant against News America.

Theme is awarded $136,776.37 in costs incurred in the district court proceedings, plus $495.00 taxed by the Court of Appeals for costs on appeal, for total costs of suit of $137,271.37.


III

A

Theme contends that it is owed additional interest on the judgment of $12,644.16 incurred between January 19, 2009, when News America first offered to pay the judgment, and February 12, 2009, when News America wired payment to Theme of the judgment plus interest through January 19, 2009.  Theme explains that the parties disputed whether News America should withhold the amount of a lien entered in a separate action against Theme in the amount of

**United States District Court**

For the Northern District of California

$95,298.92.  Suppl Herhold Decl (Doc #559) ¶¶ 5-9.  On February 10, 2009, Theme filed a motion in the District of Connecticut to quash the writ of execution, which the district court denied by order entered on July 27, 2009.  The district court issued an updated writ of execution, filed June 16, 2009, in the amount of $96,679.30 to include an additional $1380.48 in interest against Theme.  Suppl Malone Decl ¶¶ 6, 7 and Ex A (Doc #568).  On August 4, 2009 News America paid off the updated amount of the lien which was $1,380.48 higher than the lien amount that it had deducted from the payment of the judgment to Theme on February 12, 2009.  Second Suppl Malone Decl ¶¶ 8-10 (Doc #572); Pl's Resp to Def's Second Mot to Update Record at 2 (Doc #574).

        Although News America properly withheld the amount of the lien, it delayed in tendering the amount of judgment plus interest before February 12, 2009 to stop further accrual of interest.  The purpose of awarding postjudgment interest pursuant to section 1961 is to "'ensure that the plaintiff is further compensated for being deprived of the monetary value of the loss from the date of ascertainment of damages until payment by defendant.'"  See *AT & T v United Computer Systems, Inc*, 98 F3d 1206, 1209 (9th Cir 1996) (quoting *Northrop Corp v Triad Int'l Marketing, SA*, 842 F2d 1154, 1155 (9th Cir 1988) (per curiam)).  News America is therefore ordered to pay the amount of interest owed for the period January 19, 2009 to February 12, 2009, minus the amount that News America paid the judgment creditor on the updated writ of execution above the amount of the previous lien against Theme, for a total award to Theme of $11,263.68 for interest remaining due on the judgment ($12,644.16 - $1,380.48 = $11,263.68).

31

United States District Court
For the Northern District of California

B

Theme seeks postjudgment interest on its award of costs in the district court proceedings and contends that interest should be awarded as of the entry of judgment on June 1, 2006.  Doc #566 at 14 n14.  The court awards postjudgment interest on costs accruing from the date of the judgment, June 1, 2006.  See *Friend v Kolodzieczak*, 72 F3d 1386, 1391-92 (9th Cir 1995).  Applying the one-year constant maturity rate of 4.99% to the award of costs, compounded annually from June 1, 2006 to June 14, 2010, the amount of costs with postjudgment interest due as of June 14, 2010 is $166,484.57.  See Appendix Table L.  As of June 1, 2010 the daily interest on costs incurred through the date of judgment is $22.72.

The court further awards interest on the fees and costs incurred on appeal during Phase III and the fees incurred on the fee motion during Phase IV totaling $257,303.12.  Interest on those fees accrues from and including the date of this order at the weekly average 1-year constant maturity Treasury yield rate of 0.33 percent, published by the Federal Reserve for the week ending June 11, 2010.  See www.federalreserve.gov.  The daily rate of interest on the fees and costs for Phases III and IV will accrue at a daily rate of interest of $2.33.

IV

The court GRANTS Theme's motion for reasonable attorney fees, court costs and postjudgment interest on fees and costs up to June 14, 2010 in the amount of $3,069,081.80.  The court GRANTS interest remaining due on the judgment in the amount of $11,263.68.  Including the $495 in costs awarded by the court of appeals, News

America owes Theme the total amount of $3,080,840.48 plus daily interest of $386.12 from and including June 14, 2010 to the date of payment.

The clerk of court is directed to terminate all pending motions and close the file.

IT IS SO ORDERED.

_____
**VAUGHN R WALKER**
**United States District Chief Judge**

**United States District Court**
For the Northern District of California

# Appendix

Table A:   Attorney Hours during Phases I and II
September 1997 to April 2006

| Attorney | Hours requested Phase I (9/12/97–4/10/02) | Hours requested Phase II (5/7/02–4/30/06) | Total hours requested 9/12/97– 4/30/06 |
|---|---|---|---|
| B Cooper | 89.92 | | 89.92 |
| C Leffler | 8.4 | | 8.4 |
| D Furniss | 56.72 | 6.48 | 63.2 |
| E Crew | 37.44 | 568.44 | 605.88 |
| J Talbot | 70.48 | | 70.48 |
| M Smith | 3.84 | | 3.84 |
| P Kirsch | 293.28 | 2.4 | 295.68 |
| R Platt | 238.08 | | 238.08 |
| T Herhold | 402 | 993.12 | 1395.12 |
| A MacDonald | | 78 | 78 |
| H Gaudreau | | 542.84 | 542.84 |
| L Kirmsse | | 670 | 670 |
| R Zerounian | | 595.04 | 595.04 |
| T Ahearn | | 404.56 | 404.56 |
| D Bunim | 105.04 | 37.92 | 142.96 |
| TOTAL HOURS | 1305.2 | 3898.8 | 5204 |

Source: Doc ##576-1, 576-2.

**United States District Court**
For the Northern District of California

Table B:  Attorney hours during Phase III
May 2006 to October 20, 2008

| Attorney | Billed hours 5/3/2006 – 10/20/2008 | 50% Deduction for lodestar |
|---|---|---|
| B Wong | 209.0 | 104.5 |
| E Crew | 53.50 | 26.75 |
| H Gaudreau | 104.60 | 52.3 |
| N Tompkins | 45.30 | 22.65 |
| T Herhold | 419.20 | 209.6 |
| Legal Assistants | 229.70 | 114.85 |
| TOTAL HOURS | 1061.3 | 530.65 |

Source: Doc #576-3.

Table C:  Attorney hours during Phase IV
October 21, 2008 to March 3, 2010

| | Hours |
|---|---|
| B Wong | 13.0 |
| E Crew | 3.0 |
| T Herhold | 101.4 |
| Legal Assistant | 59.8 |
| TOTAL HOURS | 177.20 |

Source: Doc #576-4.

Table D:  Gross and Net Receipts of Law Partnerships, 1998-2006

| *Statistical Abstract* publication year and table number | Data Year | Gross Business receipts (billion $) (*gr*) | Net receipts (billion $) (*nr*) | Ratio (*nr/gr*) |
|---|---|---|---|---|
| 2001, no 712 | 1998 | 66 | 26 | 0.394 |
| 2002, no 701 | 1999 | 72 | 27 | 0.375 |
| 2003, no 733 | 2000 | 79 | 29 | 0.367 |
| 2004-05, no 718 | 2001 | 91 | 32 | 0.352 |
| 2006, no 727 | 2002 | 94 | 33 | 0.351 |
| 2007, no 726 | 2003 | 101 | 36 | 0.356 |
| 2008, no 723 | 2004 | 105 | 38 | 0.362 |
| 2009, no 724 | 2005 | 115 | 42 | 0.365 |
| 2010, no 730 | 2006 | 124 | 45 | 0.363 |

Source:  United States Census Bureau, *Statistical Abstract of the United States: 2001-2010*, available at www.census.gov/compendia/statab.

**Table E: 1997-2010 San Francisco Bay Area *Laffey* Rates with Prime Rate Enhancement Through 2010**

| Years Exper- ience | 1997-98 | 1998-99 | 1999-00 | 2000-01 | 2001-02 | 2002-03 | 2003-04 | 2004-05 | 2005-06 | 2006-07 | 2007-08 | 2008-09 | 2009-10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20 + | $687 | $665 | $696 | $588 | $546 | $507 | $516 | $558 | $587 | $583 | $532 | $523 | $507 |
| 11-19 | $593 | $575 | $604 | $512 | $478 | $445 | $455 | $494 | $522 | $515 | $472 | $461 | $447 |
| 8-10 | $489 | $476 | $502 | $420 | $395 | $363 | $367 | $401 | $420 | $419 | $381 | $371 | $360 |
| 4-7 | $406 | $387 | $410 | $344 | $319 | $294 | $299 | $322 | $341 | $336 | $309 | $304 | $294 |
| 1-3 | $322 | $307 | $328 | $277 | $258 | $240 | $245 | $265 | $283 | $281 | $260 | $253 | $245 |
| Para- legal | $177 | $169 | $184 | $151 | $144 | $137 | $143 | $157 | $167 | $165 | $151 | $146 | $142 |
| Prime rate | 8.5% | 8.25% | 9.5% | 6.5% | 4.75% | 4.0% | 4.5% | 6.5% | 8.25% | 8.25% | 5.0% | 3.25% | n/a |

**Based on prime rates in effect on September 12 at the end of each yearly period posted on http://www.wsjprimerate.us/wall_street_journal_prime_rate_history.htm**

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Table F:  Lodestar Calculation Based on Individual Rates and Hours for Phases I and II

| Attorney | Hours in Phase I | Hourly Billing Rate for 2002 | Attorney Fee for Phase I only | Hours in Phase II | Hourly Billing Rate for 2006 | Total Attorney Fee for Phases I and II combined |
|---|---|---|---|---|---|---|
| B Cooper (until 2000) | 89.92 | $224.70 | $20,205.02 | | | $20,205.02 |
| C Leffler (until 2002) | 8.4 | $181.90 | $1,527.96 | | | $1,527.96 |
| D Furniss | 56.72 | $385.20 | $21,848.54 | 6.48 | $445.50 | $24,735.38 |
| E Crew | 37.44 | $385.20 | $14,421.89 | 568.44 | $445.50 | $267,661.91 |
| J Talbot (until 2000) | 70.48 | $181.90 | $12,820.31 | | | $12,820.31 |
| M Smith | 3.84 | $224.70 | $862.85 | | | $862.85 |
| P Kirsch | 293.28 | $337.05 | $98,850.02 | 2.4 | $385.20 | $99,774.50 |
| R Platt (until 2000) | 238.08 | $181.90 | $43,306.75 | | | $43,306.75 |
| T Herhold | 402 | $337.05 | $135,494.10 | 993.12 | $445.50 | $577,929.06 |
| A MacDonald | | | $0.00 | 78 | $258.50 | $20,163.00 |
| H Gaudreau | | | $0.00 | 542.84 | $258.50 | $140,324.14 |
| L Kirmsse | | | $0.00 | 670 | $396.00 | $265,320.00 |
| R Zerounian | | | $0.00 | 595.04 | $214.50 | $127,636.08 |
| T Ahearn | | | $0.00 | 404.56 | $258.50 | $104,578.76 |
| D Bunim | 105.04 | $385.20 | $40,461.41 | 37.92 | $445.50 | $57,354.77 |
| Legal Assistants | 539.22 | $101.65 | $54,811.71 | 2148.96 | $126.50 | $326,655.15 |
| TOTAL FEE | | | $444,610.57 | | | $2,090,855.64 |

38

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table G:  Comparison of Theme's Fee Request with Fee Award for Phases I and II**

| Attorney | Hours in Phase I | Fees Sought for Phase I | Hours in Phase II | Fees Sought for Phase II | Fee Request for Phases I and II | Reasonable Fee Award |
|---|---|---|---|---|---|---|
| Cooper | 89.92 | $22,163.20 | | | $22,163.20 | $20,205.02 |
| Leffler | 8.40 | $2,142.00 | | | $2,142.00 | $1,527.96 |
| Furniss | 56.72 | $22,826.40 | 6.48 | $3,274.00 | $26,100.40 | $24,735.38 |
| Crew | 37.44 | $14,951.60 | 568.44 | $356,293.00 | $371,244.60 | $267,661.91 |
| Talbot | 70.48 | $8,664.40 | | | $8,664.40 | $12,820.31 |
| Smith | 3.84 | $1,075.20 | | | $1,075.20 | $862.85 |
| Kirsch | 293.28 | $104,418.00 | 2.4 | $960.00 | $105,378.00 | $99,774.50 |
| Platt | 238.08 | $40,132.80 | | | $40,132.80 | $43,306.75 |
| Herhold | 402.00 | $107,581.20 | 993.12 | $483,426.00 | $591,007.20 | $577,929.06 |
| MacDonald | | | 78 | $26,114.00 | $26,114.00 | $20,163.00 |
| Gaudreau | | | 542.84 | $160,839.40 | $160,839.40 | $140,324.14 |
| Kirmsse | | | 670 | $284,750.00 | $284,750.00 | $265,320.00 |
| Zerounian | | | 595.04 | $156,761.92 | $156,761.92 | $127,636.08 |
| Ahearn | | | 404.56 | $98,105.60 | $98,105.60 | $104,578.76 |
| Bunim | 105.04 | $26,116.80 | 37.92 | $12,452.80 | $38,569.60 | $57,354.77 |
| Legal Assistant | 539.22 | $54,052.00 | 2148.96 | $360,445.60 | $414,497.60 | $326,655.15 |
| TOTAL FEE | | | | | $2,347,545.92 | $2,090,855.64 |

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Table H: 2002-2006 Prime Rate Enhancement on Phase I Fees

| Date of interest accrual | Principal amount of fees and costs | Interest earned at 4.75% | Year-end total |
|---|---|---|---|
| 4/10/02 to 4/09/03 | $444,610.57 | $21,119.00 | $465,729.57 |
| 4/10/03 to 4/09/04 | $465,729.57 | $18,629.18 | $484,358.76 |
| 4/10/04 to 4/09/05 | $484,358.76 | $19,374.35 | $503,733.11 |
| 4/10/05 to 4/09/06 | $503,733.11 | $20,149.32 | $523,882.43 |
| 4/10/06 to 6/01/06 (52 days at $68 per day) | $523,882.43 | $3,536.00 | $527,418.43 |

### Table I: Postjudgment Interest on Phases I & II Fees as of June 1, 2006

| Date of interest accrual | Principal amount of fees | Interest earned at 4.99% | Year-end total |
|---|---|---|---|
| 6/1/06 to 5/31/07 | $2,173,663.50 | $108,465.81 | $2,282,129.31 |
| 6/1/07 to 5/31/08 | $2,282,129.31 | $113,878.25 | $2,396,007.56 |
| 6/1/08 to 5/31/09 | $2,396,007.56 | $119,560.78 | $2,515,568.34 |
| 6/1/09 to 5/31/10 | $2,515,568.34 | $125,526.86 | $2,641,095.20 |
| 6/1/10 to 6/14/10 (13 days at $361.07 per day) | $2,641,095.20 | $4,693.91 | $2,645,789.11 |

United States District Court
For the Northern District of California

Table J:  Lodestar Calculation for May 2006 to
October 20, 2008

| Attorney or Legal Assistants | Years of Experience as of 2008 | Hourly Billing Rate | Adjusted Hours in Phase III | Phase III Fee |
|---|---|---|---|---|
| B Wong | 1 | $247.50 | 104.5 | $25,863.75 |
| E Crew | 40+ | $511.50 | 26.75 | $13,682.63 |
| H Gaudreau | 8 | $363.00 | 52.3 | $18,984.90 |
| N Tompkins | 12 | $451.00 | 22.65 | $10,215.15 |
| T Herhold | 22 | $511.50 | 209.6 | $107,210.40 |
| Legal Assistants | n/a | $141.70 | 114.85 | $16,274.25 |
| TOTAL FOR PERIOD: | | | | $192,231.07 |

Table K:  Lodestar Calculation for
October 21, 2008 to March 3, 2010

| | Hours | Hourly Rate | Phase IV Fee |
|---|---|---|---|
| T Herhold | 101.4 | $506.85 | $51,394.59 |
| B Wong | 13.0 | $245.25 | $3,188.25 |
| E Crew | 3.0 | $506.85 | $1,520.55 |
| Legal Assistant | 59.8 | $141.70 | $8,473.66 |
| TOTAL FOR PERIOD: | | | $64,577.05 |

41

1

**United States District Court**
For the Northern District of California

Table L: Postjudgment Interest on Phases I & II Costs

| Date of interest accrual | Principal amount of costs incurred through 6/1/06 | Interest earned at 4.99% | Year-end total |
|---|---|---|---|
| 6/1/06 to 5/31/07 | $136,776.37 | $6,825.14 | $143,601.51 |
| 6/1/07 to 5/31/08 | $143,601.51 | $7,165.72 | $150,767.23 |
| 6/1/08 to 5/31/09 | $150,767.23 | $7,523.28 | $158,290.51 |
| 6/1/09 to 5/31/10 | $158,290.51 | $7,898.70 | $166,189.21 |
| 6/1/10 to 6/14/10 (13 days at $22.72 per day) | $166,189.21 | $295.36 | $166,484.57 |

42